## INDEPENDENT ORDER OF PURITANS v. PARKER. (No. 2361.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 3, 1921.)

1. **Insurance** ☞719(3), 755(3)—**By-law of fraternal society not sufficiently certain to raise rates; retention of payments waives their insufficiency.**

On the certificate of a member of a fraternal society providing that the beneficiary would on the death of insured be paid $1,000 if insured had complied with all by-laws then existing or thereafter in force, such sum is recoverable, the monthly assessment provided by the certificate having been regularly paid and accepted without any knowledge by insured that it was insufficient to maintain that amount of insurance, notwithstanding a by-law enacted after issuance of certificate providing that the amount of insurance payable on a certificate shall depend on and be fixed and determined by the amount of monthly premium payments at the age attained by the member at the rate on the basis of the American Mortality Experience Tables; it being impossible for any one other than an expert actuary to determine from the tables that any greater payment was required, and the by-law being therefore inoperative.

2. **Insurance** ☞719(3)—**Fraternal benefit society may raise rates on existing certificate.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 4834, a fraternal benefit society may by by-law raise amount of assessments payable on an existing policy.

3. **Insurance** ☞712—**Statute against society accepting transfer of membership inapplicable to foreign society.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 4841, inhibiting a domestic fraternal benefit society accepting transfer of membership, unless evidenced in a certain way, is inapplicable to a society of another state.

Appeal from District Court, Upshur County; J. R. Warren, Judge.

Action by W. R. Parker against the Independent Order of Puritans. Judgment for plaintiff, and defendant appeals. Affirmed.

Our United Brotherhood, a fraternal beneficiary society, chartered under the laws of Texas, issued to Sallie F. Parker on July 25, 1912, a certificate of life insurance which reads as follows:.

"That Sallie F. Parker, a member of Latch Lodge No. 158 of Our United Brotherhood, located at Latch in Upshur county, Texas, while in good standing as a member of this society is entitled to participate in its beneficiary fund in the sum of one thousand dollars upon the death of the insured, to be paid to William R. Parker, related to said member as husband, and in conformity with the conditions on the back hereof and with the by-laws as they now are or may hereafter be lawfully amended."

On the policy was the following, signed by the insured:

"I agree to be governed by the laws and by-laws of the Supreme Lodge and of this local lodge of which I am now about to become a member."

The following are, as material, the conditions referred to and made a part of the certificate:

"First. This certificate is issued in consideration of the agreements, representations and warranties made by the within named member in the original application for membership, together with the answers made thereon to the medical examiner, and in consideration of the payments heretofore made and of agreement to pay dues and assessments in compliance with the laws of the society as long as he or she remains a member.

"Second. Should death occur in six, twelve or eighteen months of membership, then sixty per cent., seventy per cent. or ninety per cent., respectively, of the amount of the certificate shall be paid. Should death occur after twenty-four months of membership the full face thereof shall be paid, provided that at the time of death the member is in good standing and has complied with all the laws, rules and regulations of the society then in force."

The following "rider" is attached to the above policy and is a part thereof:

"The Independent Order of Puritans of Pittsburg, Pa., a fraternal beneficiary order operating under the laws of Pennsylvania, herewith agrees to assume the insurance contract liabilities, subject to all laws, regulations and rules of the Supreme Council, as set forth in the contract to which this rider is attached, being No. 5958 issued by Our United Brotherhood, Sulphur Springs, Texas, this October 29, 1914."

The insured died April 10, 1919. The beneficiary in the policy brought the suit against the Independent Order of Puritans on its obligation to assume and pay the policy, for the sum stated in the face of the policy, the statutory penalty of 12 per cent. and attorney's fees, and $11.10 advanced assessments paid. The defendant answered by general denial, and especially that the Supreme Council, acting within its authority, on June 17, 1915, passed a resolution, in order to provide a necessary and required fund to pay policies, providing:

"That the amount of insurance payable under all existing and outstanding life insurance contracts in this order either for the payment of annuity or lump sum amounts, shall depend upon and be fixed and determined by the amount of the monthly premiums on payments at the age attained by the member at the rate on the basis of the American Experience Mortalities Tables at four per cent., and claims hereafter existing against the order shall be paid upon that basis." ·

It was further alleged that the insured had notice of the law passed by the Supreme Council, and was at her death paying $1.10

monthly dues, which rate at her age entitled her under the said law to $447.15 and no more, which amount was tendered into court. The plaintiff filed a supplemental petition of general denial and of estoppel as follows:

"That the insured was never willing or consented to any reduction in the amount payable under said policy below $1,000, but always stood ready and willing to pay to the defendant whatever assessment was necessary to entitle the beneficiary under her policy of insurance, name this plaintiff to receive at her death the sum of one thousand dollars; that she was never notified, informed or knew from any source that the amount which she continually paid to the defendant, and which was accepted as dues from her, was not sufficient to entitle her said beneficiary to $1,000 at her death. That said insured and this plaintiff were ignorant and unlearned people; that they did not know how much insurance could be bought for the dues she was paying to the defendant under the American Experience Mortality Table, and were led to believe by the acts and conduct of the defendant, in not charging the amount payable according to the face of her policy and in not notifying her that the amount she was paying would not buy that amount of insurance, and defendant is now estopped from claiming any reduction in said policy. This plaintiff shows to the court that he is willing to now pay to the defendant such an additional amount over and above the $1.10 per month as may be necessary to buy $1.000 of insurance under the by-laws of the defendant, and here now tenders into court such an amount as this court may find to be necessary."

The court after hearing the evidence entered judgment in favor of the plaintiff for $1,000 and interest, denying a recovery for the attorney's fees, penalty, and advance premiums paid.

The facts are undisputed, and there is presented on appeal a single question of law.

The insured was born November 15, 1876. She regularly paid monthly dues to the amount of $1.10 from the date of the policy until the date of her death, and which were regularly accepted by the appellant. It was admitted on the trial:

"That the dues of Sallie F. Parker were paid in the defendant order up to the time of her death, and that there is no delinquent dues on the policy or certificate of membership in suit."

It was proven by defendant that in June, 1915, at a regular meeting of its Supreme Council, the by-laws were regularly and legally amended as set out in the resolution pleaded. Notice was published in the official paper of appellant of the passing of the new by-law, and insured had constructive notice of such amendment of the by-law, but she did not have any actual knowledge that the rate was changed, and she did not know that the assessment she was paying would not buy or pay for $1,000 insurance. She believed she was paying assessments on $1,000. The original policy was never changed except as to

the "rider" put thereon, and there is no evidence that she consented to a reduction of the amount of insurance. There is no evidence that the appellant ever notified her of any reduction in the amount of insurance below $1,000. The by-laws of the appellant and the mortality table adopted are in evidence, and, being unchallenged, will be here adopted, without necessity of copying herein.

J. M. Buford, of Mt. Pleasant, for appellant.

T. H. Briggs, of Gilmer, and Simpson, Lasseter & Gentry, of Tyler, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] The policy in suit, issued by Our United Brotherhood in June, 1912, provided that the beneficiary named therein would be paid upon the death of the insured "the sum of one thousand dollars" out of the beneficiary fund of the society, if the insured had complied with all the laws duly enacted at the time of or subsequent to the issuance of the policy. In October, 1914, the appellant assumed in writing "the contract liabilities" of the first society on this policy in suit. The rate or monthly assessment that the insured was to pay was fixed and stated in the policy at $1.10, and this sum the insured regularly paid each month from the date of the policy to the time of her death in April, 1919. These monthly assessments were received and accepted by the appellant from the date of its contract. Insured was not in default at her death in any payment of dues and assessments in the amount mentioned, as admitted in the trial. In June, 1915, the Supreme Council, which is the legislative body of appellant, acting within its authority, duly enacted a by-law, with the intention of providing a necessary reserve fund by means of rerating and increasing the monthly premium payments on all existing and outstanding policies of insurance. And the real controversy in the trial of this case under the pleadings and evidence was whether the monthly premium payments of the insured at the time of her death legally entitled the beneficiary, under the by-law enacted in June, 1915, to recover the sum of $1,000 stated in the face of the policy, or the reduced amount of $447.15. The point made by the appellant on appeal is that the recovery of the face amount of the policy, as determined by the court, was, under the undisputed evidence, legally erroneous because the monthly premium payments of the insured on the policy only entitled the beneficiary, under the terms of the by-law of June, 1915, to the sum of $447.15, and no more. It is thought that the appellee proved a liability for the face of the policy, unless the evidence offered by appellant under its answer has the legal effect to reduce the amount of insurance below the face of the policy. It is not contended that the amount of $1,000 stated in the policy was an amount in ex-

cess of the authority of appellant to pay under its laws if the required monthly premium payments have been made by the insured. For section 2 of article 12 of appellant's General Laws, existing at the time and now in force, provides:

"Straight life certificates payable at death only shall be issued for sums not less than $250.00 and not more than $2,000.00 on receipt of official notice and in accordance with the following table of rates: (Here follows the table of rates)."

It does not appear, nor is it contended on appeal, that the monthly premium payments of $1.10 made by the insured were not in accordance with such "table of rates." Did the by-law of June, 1915, alter such "table of rates" and by its terms or under its provisions make the monthly premium payment of $1.10 an inadequate and insufficient premium for $1,000 of insurance at the age of the insured in the instant policy? The by-law in question provides:

"The amount of insurance payable on all existing and outstanding life insurance contracts in this order, either for the payment of annuity or lump sum amounts, shall depend upon and be fixed and determined by the amount of the monthly premium payments at the age attained by the member at the rate on the basis of the American Mortality Experience Tables at four per cent., and claims hereafter existing against the order shall be paid on that basis."

The preamble or caption of the act declared the purpose of the by-law to be "to regulate the certificates now in force where the premiums paid are not sufficient to provide the necessary reserve to meet such valuations." Plainly it was the object of the by-law to rerate and adjust "the amount of the monthly premium payments" on existing policies of the society, in accordance with and based on the specified mortality tables. The face of the by-law, as seen, is in general terms and leaves "the monthly premium payments" or "the rate" at the age attained by the member required to be paid to "depend upon and be fixed and determined" on the basis and in accordance with the rates stated in the specified mortality tables. In effect the by-law adopts the specified mortality tables as a plan in itself fixing the amount of monthly premium payments required for a given amount of insurance. The appellant had the right to adopt a by-law altering and raising rates or assessments payable monthly, and which only was here undertaken to be done. Article 4834, Vernon's Sayles' Stat.; 2 Joyce on Ins., § 748; United Benevolent Ass'n v. Cass, 54 Tex. Civ. App. 628, 119 S. W. 123; as reference see Fraternal Mystic Circle v. Ericson, 131 S. W. 92. And the insured was bound by the by-law; and the liability of the insured to assessments must depend upon the by-law. Since the by-law does not otherwise fix the monthly premiums, reference necessarily must be made to the specified mortality tables adopted to determine the monthly premium payments required of the insured at her age to be paid. The appellant proved by an expert actuary of 15 years' continuous experience:

"Yes, I know what the American Experience Mortality Tables are, and I have a copy of the same in my possession, the American Experience Mortality Tables in an expression of the mortality experience of several life insurance companies during many years of operation reduced to tabular form through mathematical process. The expression 'four per cent.' means that the rates made in accordance with said table of mortality are upon the assumption of four per cent. compound interest being earned on the accumulated reserves thereunder. This table is recognized as a standard by-law."

There is attached to this deposition as identified by the witness a copy of the American Experience Mortality Tables, showing the following information with respect to ages from 30 to 39:

| Age | Number surviving at each age | Deaths in each year | Number dying in each 1,000 | Expectation of life in years |
|---|---|---|---|---|
| 30 | 85,441 | 720 | 8.43 | 35.33 |
| 31 | 84,721 | 721 | 8.51 | 34.63 |
| 32 | 84,000 | 723 | 8.61 | 33.93 |
| 33 | 83,277 | 726 | 8.72 | 33.21 |
| 34 | 82,551 | 729 | 8.83 | 32.50 |
| 35 | 81,822 | 732 | 8.95 | 31.78 |
| 36 | 81,090 | 737 | 9.09 | 31.07 |
| 37 | 80,353 | 742 | 9.23 | 30.35 |
| 38 | 79,611 | 749 | 9.41 | 29.62 |
| 39 | 78,862 | 756 | 9.59 | 28.90 |

The actuary, continuing, testified that the amount of insurance purchased by $1.10 per month at the age of the insured (36 years) is $447.15. He further testified that—

"The said tables are used by practically all the life insurance companies operating in the United States."

As the proof is affirmative that the mortality table in evidence is a copy of the American Experience Mortality Tables "used by practically all the life insurance companies operating in the United States," it must be considered as conclusive that the by-law adopted that very identical mortality table here copied in the record. Considering, then, the mortality table here proven, there is not disclosed a stated rate or fixed amount of monthly premium payments for insurance. And by the terms of the law this mortality

table must be taken by the insured as the available source of information for the purpose of determining the monthly premium table or rate of assessment required of her. The by-law does not authorize or require the insured member to go outside of this mortality table for further information as to the premium payments required for insurance. An insured member, then, in looking to such mortality table for the purpose of complying with the by-law, would only find that at his age a given per cent. in a thousand die and that his life expectancy is only so many years. It is not fairly supposable that an insured member could take the information merely as to longevity of life, and from such data only know or even be able to compute the required monthly premium payments for insurance. In this case even the experience of an expert actuary was required to state the amount of insurance a given monthly premium would pay for, and that computation was made by him, seemingly, on extrinsic facts outside the information imparted by the mortality tables. To require an insured member to determine from this table as proven the amount of monthly premiums payable would be to require him to seek the services of an expert actuary. This is not required by the terms of the by-law. The insured member is not required to go outside the terms of the by-law in order to avoid a forfeiture or reduction of amount of his insurance. The by-law in order to be operative must be reasonably certain in its terms, or capable of being complied with according to its terms. It is conceded in the record that the insured had no other notice of the monthly premium payments than this by-law would be held to have charged her with. A reduction of the amount of insurance for failure of compliance on the part of the insured with the by-law according to its terms could not be, it is believed, legally predicated on the pleading and evidence in this case. There is no sufficient proof of any increased rates by the by-law itself, nor any rule or order thereafter of the society. The burden of proof was on the appellant to show increased premium payments under the terms of the by-law. The evidence showing as it did that the insured paid the monthly premiums required under the valid laws of the society, her beneficiary should recover, as done, the face of the policy. The appellant with knowledge of the facts collected such premiums as she paid, and retained them without objection until after her death. The first assignment of error is overruled.

[3] The second assignment is overruled. There is no proof showing a merger of the two societies. The appellant is not a domestic society so as to come under the terms of the provision of article 4841, Vernon's Sayles' Statutes.

The judgment is affirmed.

⬉⟾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes